UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROCK FINTEK LLC, | ) |
| Plaintiff, | ) Civil Action No. 25-cv-6986 |
| v. | ) |
| ADORAMA INC., and KITCHEN WINNERS NY INC, | ) |
| Defendants. | ) |

**OPPOSITION TO ADORAMA INC.'S MOTION TO DISMISS**

Plaintiff Rock Fintek LLC, respectfully submits this opposition to the Motion to Dismiss filed by defendant Adorama, Inc. ("Adorama").

**Introduction**

This is an action to enforce a settlement reached between the parties in connection with a prior action in this Court styled as: *Kitchen Winners NY Inc. v. Rock Fintek*, Civil Action No. 22-cv-05276-PAE (the "Settled Action"). On the virtual eve of trial in a highly contested litigation and after significant mediation efforts by the Court, the parties reached a binding settlement on all material terms of the dispute in the Settled Action, including payment amounts, scope of releases, confidentiality terms, and default provisions, and reported the matter as settled to the Court. The sole basis of Adorama's motion to dismiss is an argument that the parties did not reach a meeting of the minds on one ancillary term – a specific enforcement mechanism to enforce the settlement, which Adorama claims was material. That argument is misplaced. As evident from the parties' written communications, a specific settlement enforcement mechanism was not a material term of the settlement. While Rock Fintek *proposed* a confession of judgment in negotiations, once it

became clear that the parties could not reach agreement on that issue, Rock Fintek dropped that issue, and counsel for Adorama responded by email that "[t]hen we have a deal," which the parties promptly reported to the Court. *See* Amended Complaint ("AC"), Exhibit A (ECF 7-1) at 1. In other words, Rock Fintek agreed that a specific enforcement mechanism was not a material term of the settlement before reporting the case as settled. Moreover, Adorama also ignores in its motion the fact that the parties performed on a material term of the settlement agreement – dismissal of the Settled Action – and the obvious fact that a specific enforcement mechanism was not material or necessary because such a mechanism exists by default in the form of this breach of contract action now before the Court.

In short, rather than dismissal, the record before the Court is sufficient for summary judgment to enter in Rock Fintek's favor enforcing the settlement agreement between the parties.[1]

**Factual Background**

Rock Fintek, Kitchen Winners and Adorama were parties to a hotly contested litigation in the Settled Action arising from transactions between them involving personal protective equipment during the peak of the COVID-19 pandemic. AC ¶ 7.

By February 28, 2025, after extensive settlement efforts, including an in-person settlement conference before Hon. Paul A. Engelmayer, the parties reached a settlement agreement. On February 28, 2025, at 5:07 p.m., counsel for Rock Fintek emailed the following proposed terms of the settlement to counsel for Adorama and Kitchen Winners:

1. Adorama shall pay $100,000 to Rock Fintek by wire transfer, as follows:

    a. $50,000 within three (3) business days of the execution of a settlement agreement;
    b. $25,000 within thirty (30) calendar days after the payment in paragraph

---

[1] Rock Fintek intends to promptly submit a pre-summary judgment letter pursuant to paragraph 3.H of this Court's Individual Rules and Practices in Civil Cases.

>    1(a);
>    c. $25,000 within thirty (30) calendar days after the payment in paragraph 1(b).
> 2. Adorama and Kitchen Winners have reached a separate financial agreement between them.
> 3. Adorama shall execute a confession of judgment in favor of Rock Fintek in the amount of $165,000, which counsel for Rock Fintek will hold in escrow pending the performance of Adorama's payment obligations.
> 4. If Adorama defaults on its payment obligations under paragraphs 1 (a)-(c) and fails to cure such default within three (3) business days of email notice of the default, Rock Fintek shall have the right to execute on the confession of judgment, set off only by any settlement payments already made.
> 5. Mutual general releases.
> 6. Standard mutual confidentiality and non-disparagement provisions.
> 7. Counsel for Rock Fintek will draft the settlement papers.

ECF 7-1. After additional phone calls and email communications, the parties also agreed that:

- the settlement terms include dismissal of all claims between the parties with prejudice;
- Kitchen Winners and Rock Fintek would not be making any financial payments to one another, which payments will solely be the responsibility of Adorama.

*Id.* Following the February 28 email exchange set forth above, on February 28, 2025 at 5:27 p.m, the parties reported the case to the Court as settled. *See* AC, Exhibit B (ECF 7-2) (email from counsel to Court reporting settlement).

On March 3, 2025, in advance of a settlement conference before the Court, the parties engaged in further phone calls and email communications to finalize the settlement terms. In those discussions, Adorama did not agree with providing a confession of judgment. On March 3, at 1:30 p.m., Rock Fintek's counsel sent an email to memorialize the parties' agreement that the cure period for Adorama would be modified from three business days to seven calendar days, to which Adorama's counsel responded "Then we have a deal…" and clarified that Adorama did not agree to a confession of judgment that Rock Fintek had previously requested. *Id.* Rock Fintek's counsel agreed to drop the confession of judgment and responded to clarify that Adorama agreed to "*a mechanism for enforcing the settlement that would result in a judgment for $165K against*

3

Adorama upon a default...." *Id.* Adorama's counsel responded:

> Correct. My client agrees to enforcement of the settlement agreement, but will not execute a confession of judgment.

*Id.*

At 2:00 p.m. on March 3, Judge Engelmayer conducted a conference call with all counsel of record at which time the settlement was reported to the Court.

Subsequently, counsel for Rock Fintek drafted a formal settlement agreement incorporating the terms reached on February 28, 2025. *See* AC, Exhibit C (ECF 7-3). Rock Fintek proposed a different enforcement mechanism but Adorama did not agree to that enforcement mechanism, leaving in place the default enforcement mechanism available to any party to any contract – i.e. a breach of contract action. Over the next several weeks, Rock Fintek's counsel continued to attempt to reach Adorama's counsel to "get this wrapped up." *See* Rakhunov Declaration, Exhibit 1 (email exchange between counsel). For a time, counsel for Adorama was not reachable due to an apparent family situation, and later wrote that he "reached out to [his] client who has not been responsive." After several more weeks of ignoring follow up emails, in a June 16, 2025 email, counsel for Adorama took the position that "we had no agreement and the court has no jurisdiction to enforce it." *Id*.

This enforcement action followed.

## Argument

Under New York law,[2] "stipulations of settlement are judicially favored, will not lightly be set aside, and are to be enforced with rigor and without a searching examination into their substance as long as they are clear, final and the product of mutual accord. *St. Louis v. CAP COM Fed. Credit Union*, 231 A.D.3d 1383, 1384 (3d Dep't 2024) (internal quotation marks and citations

---

[2] Rock Fintek agrees that New York law applies to this enforcement action.

omitted). A settlement agreement is a contract that is interpreted according to general principles of contract law. *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007). Once entered into, the contract is binding and conclusive. *Id*. When a party makes a deliberate, strategic choice to settle, a court cannot relieve him of that a choice simply because his assessment of the consequences was incorrect. *Id.* (citing *United States v. Bank of N.Y.,* 14 F.3d 756, 759 (2d Cir.1994)).

Writings between parties to an action or proceeding that discuss the possibility of settlement will be considered to constitute a binding agreement if the settlement agreement was adequately described in such writings, namely, the agreement was clear, the product of mutual accord and contained all material terms. *CAP COM Fed. Credit Union*, 231 A.D.3d at 1384-85. In this Circuit, an agreement that addresses all negotiated terms is enforceable even if it is oral, written in an email, and/or even if it contemplates a subsequent written memorialization of its terms in a fully executed document. *See Estate of Brannon v. City of New York*, No. 14-cv-2849 (AJN) (SN), 2015 WL 13746664, at *5 (S.D.N.Y. Oct. 19, 2015) ("The fact that the exchange occurred by email does not weaken the enforceability of the agreement."). The "mere fact that the parties contemplate memorializing their agreement in a formal document does not prevent their informal agreement from taking effect prior to that event." *V'Soske v. Barwick*, 404 F.2d 495, 499 (2d Cir. 1968). So too, a preliminary settlement agreement may be binding even where it is designated by the parties only a settlement "in principle." *HVN Clothing, Inc. v. Lomeway E-Com. (Luxembourg) Ltd.*, 636 F. Supp. 3d 451, 456 (S.D.N.Y. 2022).

Technical changes arising in negotiations of a final written agreement do not defeat enforceability of settlement terms unless they show that there were points remaining to be negotiated such that the parties would not wish to be bound until they synthesized a writing "satisfactory to both sides in every respect." *Powell*, 497 F.3d at 130; *see also Rawald v. Dormitory*

*Authority of New York*, 199 A.D.3d 477, 477 (1st Dep't 2021) (plaintiffs established enforceable settlement by submitting emails from counsel agreeing to accept settlement notwithstanding outstanding issues regarding language of release and lien issues).

Furthermore, if CPLR 2104, requiring settlement agreements to be in writing and ascribed-to by the parties is deemed applicable, New York courts have held that email exchanges among counsel memorializing the settlement terms suffice for that purpose under New York law. *Cap Com Federal Credit Union*, 231 A.D.3d at 1385 (enforcing a settlement agreement between attorneys for the parties to an action finding that emails between counsel set forth the material terms of the settlement); *Philadelphia Ins. Indem. Co., v. Kendall*, 197 A.D.3d 75, 80 (1st Dep't 2021) (holding that "if an attorney hits 'send' with the intent of relaying a settlement offer or acceptance, and their email account is identified in some way as their own," the parties' counsel's emails create a binding settlement agreement).

### I. THE FEBRUARY 28 AND MARCH 3 EMAIL EXCHANGE AMONG COUNSEL CONSTITUTES A BINDING AND ENFORCEABLE SETTLEMENT AGREEMENT.

As alleged in the Amended Complaint and set forth in the communications between counsel, the following agreed upon settlement terms were clear, final and a product of mutual accord, easily sufficient to constitute a binding settlement agreement:

- Adorama shall pay $100,000 to Rock Fintek by wire transfer ($50,000 within three business days of the execution of a settlement agreement; $25,000 within thirty calendar days after the first payment; and $25,000 within thirty calendar days after the second payment).

- If Adorama defaults on its payment obligations and fails to cure such default within seven calendar days of email notice of the default, Rock Fintek shall be entitled to a

6

default payment of $165,000, set off only by any settlement payments already made.

- Mutual general releases.

- Standard mutual confidentiality and non-disparagement provisions.

- Dismissal of all claims between the parties with prejudice.

- No financial payments between Kitchen Winners and Rock Fintek, which payments will solely be the responsibility of Adorama.

- No specific enforcement mechanism.

*See* AC, Exhibit A.

In response to emails reflecting these terms, counsel for Adorama responded that "we have a deal" and "[m]y client agrees to enforcement of ***the settlement agreement***, but will not execute a confession of judgment (emphasis added)," and the parties then reported the case as settled. At no point in time did any party state any reservation of rights not to be bound by the settlement until the parties signed a written document memorializing their emailed settlement agreement, and no party conditioned performance on preparing a formal agreement. Indeed, the parties have partially performed the settlement terms, allowing dismissal of the Settled Action, which was a material term of the settlement.

The issue of specific enforcement mechanisms, including whether the Court would retain jurisdiction over this matter (which would have required putting confidential terms into the public record at a time when Rock Fintek was still facing potential exposure from third parties) was not a material issue and not one that the parties quibbled over. Rather it was an ancillary issue that did not affect the actual deal terms. When Adorama said no to a confession of judgment, Rock Fintek was satisfied with not having a confession of judgment and never again sought to negotiate one. That Rock Fintek sought to include a different type of an enforcement mechanism into a draft

7

formal agreement that it circulated and Adorama did not agree to that mechanism does not in any way modify or nullify the settlement reached between the parties, or its material terms. After all, this very action is an enforcement mechanism. Instead, Rock Fintek, Adorama and Kitchen Winners allowed the Settled Action to be dismissed, thereby performing one of their mutual obligations under the settlement terms. The draft settlement agreement contained the same material terms agreed upon between the parties.

Under these facts, not only should Adorama's motion to dismiss be denied but summary judgment should enter in Rock Fintek's favor enforcing the settlement terms. Under New York law, courts routinely enforce and find similar binding settlement agreements reached by email. *See Burrell v. Bizzoco*, 71 Misc. 3d 1232(A), 146 N.Y.S.3d 920 (N.Y. Sup. Ct. 2021) (finding enforceable agreement in email exchange where counsel, in response to an email about resolving the case for a certain dollar amount, wrote that they spoke to the client and "[i]f we can wrap this up today, I can meet in the middle at $20k" and later, on receiving an email referencing a "General Release ... reflecting the $20,000 settlement[,]" responded, in part, "will turn this around quickly."); *Herz v. Transamerica Life Ins. Co.*, 172 A.D.3d 1336, 1338 (2d Dep't 2019) (collecting cases and finding an enforceable agreement where "emails were subscribed by counsel, set forth the material terms of the agreement—the acceptance by the plaintiff's counsel of an offer in the sum of $12,500 to settle the case in exchange for a release in favor of Transamerica—and contained an expression of mutual assent"); *Nash v. Walker Mem'l Baptist Church, Inc.*, 75 Misc. 3d 1213(A), 168 N.Y.S.3d 678 (N.Y. Sup. Ct. 2022) (granting motion to enforce settlement where plaintiff "established prima facie that the parties had an enforceable settlement agreement by submitting an email from Walker's counsel agreeing to the settlement"); *Brigante v von Ballmoos*, 83 Misc 3d 1287(A) (N.Y. Sup, Ct. 2024) (finding settlement agreement set forth in email

exchanges enforceable).

As the *Hertz* court explained, where the "settlement was not conditioned on any further occurrence, such as the formal execution of the release and settlement … plaintiff's subsequent refusal to execute the release did not invalidate the agreement." *Hertz*, 172 A.D.3d at 1338.

Finally, in its motion, Adorama does not cite to a single case to support its position that the parties' lack of agreement on an ancillary issue of an enforcement mechanism beyond a default mechanism of an action like this one somehow invalidates the detailed material settlement terms on which the parties relied in reporting the case as settled and partially performing under the settlement in allowing the Settled Action to be dismissed.  The sole case cited by Adorama actually supports Rock Fintek's position. *See Powell v. Omnicom*, 497 F.3d 124, 129 (2d Cir. 2007) (enforcing settlement terms recited on the record despite a lack of subsequent written settlement agreement and despite parties' inability to agree in negotiations on the language of a reference letter and other aspects of the agreement).

## Conclusion

Based on the foregoing, Rock Fintek respectfully requests that the Court deny Adorama's motion to dismiss and grant such other relief in Rock Fintek's favor as just and proper.

Dated:  October 31, 2025                    Respectfully submitted,

/s/Phillip Rakhunov
Phillip Rakhunov
John Yokow
POLLACK SOLOMON DUFFY LLP
48 Wall St 31st Fl
New York, NY 10005
Telephone: (212) 493-3100
Facsimile: (212) 434-0109
prakhunov@psdfirm.com

## Certificate of Service

      The undersigned certifies that this document is being served on counsel on all parties via ECF on October 31, 2025.

                                        /s/Phillip Rakhunov